**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**GREGORY J. BOUEY,**

        **Plaintiff,**

**-vs-**                                                 **Case No. 6:06-cv-1453-Orl-31UAM**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

---

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

Plaintiff Gregory J. Bouey ["Bouey"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying Bouey's application for a period of disability, disability insurance benefits, and Supplemental Security Income. *See* Docket No. 1 (complaint). For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**I.**     **PROCEDURAL HISTORY**

On June 17, 2004, Bouey filed a claim for disability insurance benefits, a period of disability, and Supplemental Security Income claiming disability as of October 21, 2003. R. 48-50. These applications were denied initially and on reconsideration. R. 29-34, 36-38, 110-19. On April 20, 2005, the Honorable John T. Yeary, Administrative Law Judge ["ALJ"], held a hearing on Bouey's claim in Orlando, Florida. R. 206. Non-attorney Robert L. Hicks, Jr. represented Bouey at the hearing. *Id.* The ALJ heard testimony from Bouey. R. 208-224.

On June 16, 2005, the ALJ issued a decision that Bouey was not disabled and not entitled to benefits. R. 15-22. Following a review of the medical and other record evidence, the ALJ found that Bouey has the residual functional capacity ["RFC"] to lift objects weighing up to twenty pounds occasionally and ten pounds frequently and to stand/walk a total of six hours overall in an eight-hour day. R. 21, Finding 6. The ALJ found that Bouey can occasionally climb, balance and crawl, and he can frequently reach bilaterally, but can only occasionally reach in all directions, including overhead. R. 23, Finding 6. The ALJ further found that Bouey is unable to perform past relevant work; however, considering his age, education and work experience, there are a significant number of jobs in the national economy that he could perform. R. 22, Findings 7, 11. The ALJ concluded that Bouey was not disabled. R. 22, Finding 11.

After considering additional evidence, the Appeals Council denied review on July 24, 2006. R. 4-6. On September 21, 2006, Bouey timely appealed the Appeals Council's decision to the United States District Court. Docket No. 1. On May 16, 2007, Bouey filed in this Court a memorandum of law in support of his appeal. Docket No. 17. On July 18, 2007, the Commissioner filed a memorandum in support of his decision that Bouey was not disabled. Docket No. 18. The appeal is ripe for determination.

## II.     THE PARTIES' POSITIONS

Bouey assigns several errors to the Commissioner. First, Bouey claims the Commissioner erred by mechanically applying the Medical-Vocational Guidelines ("Grids") and failing to obtain vocational expert ["VE"] testimony in light of Bouey's nonexertional impairments. Second, Bouey asserts the Commissioner erred by improperly evaluating the nonexertional impairment of pain. Third, Bouey

contends that the Commissioner erred in failing to properly assess his credibility.  The Commissioner argues that substantial evidence supports his decision and the decision should be affirmed.

### III. THE STANDARD OF REVIEW

#### A. AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

#### B. REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a

Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate

where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon*

*v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

## V.     APPLICATION AND ANALYSIS

### A.     THE FACTS

Bouey was fifty-one years of age at the time of the hearing before the ALJ, and he was fifty years of age as of the alleged onset date of disability, October 21, 2003. R. 48, 107, 211. He alleges disability due to back, shoulder, and neck pain post surgery. R. 16. Bouey completed the twelfth grade of high school in September, 1973. R. 70. Prior to the alleged onset date of disability, Bouey was employed by a lawn care service where he mowed grass, edged the grass, pulled weeds, picked up debris, and applied chemicals to the grass. R. 77, 215. Bouey's occupation required him to be on his feet throughout the day and frequently lift weight equaling fifty pounds R. 77. Prior to this job, Bouey was a horse groomer

---

[1] The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

responsible for caring for and feeding horses. R. 76, 78, 216. In this job he had to lift items weighing up to seventy-five pounds. R. 78.

Bouey sought medical attention from Dr. Vajin Khan for neck pain and radiating numbness/tingling into the right and upper extremity/hand in May, 2003, prior to the onset of his disability. R. 130. Dr. Khan recommended physical therapy and Bouey agreed conditioned on the therapy occurring only one time per week as he could not afford further visits. *Id*. On June 10, 2003, an MRI of Bouey's cervical spine revealed Cervical Spondylosis Disease, most pronounced in the lower cervical spine and exaggerated by chronic Kyphosis. R. 120. The MRI also revealed "a focal disk extrusion paracentral to the right at C6-7 with inferior migration." *Id*.

Dr. Khan referred Bouey to a neurosurgeon, Dr. Christopher Baker, on July 21, 2003. R. 137. During the initial evaluation, Dr. Baker noted that he had reviewed the MRI and concluded that Bouey suffered from a foraminal disk herniation at C5-6 with narrowing of the foramen at this level, as well as a right paracentral disk herniation at C6-7 and a small central disk herniation at C4-5. R. 138. Dr. Baker decided to follow-up with Bouey after six weeks and if his symptoms worsened, they were going to consider a multilevel anterior cervical diskectomy and fusion. *Id*. Bouey returned to Dr. Baker's office on October 13, 2003 complaining of continued left upper extremity pain and parasthesias. R. 136. Dr. Baker concluded that Bouey should undergo an anterior cervical diskectomy and fusion at C3-7 with a posterior fusion over the same levels. *Id*. On October 22, 2003, Bouey underwent an anterior cervical decompressive foraminotomy at C3-C7 with anterior cervical plating at C3-C7 and posterior lateral mass plate arthrodesis at C3-C7. *See* R. 122-127, 135.

Two weeks after the surgery, Bouey returned to Dr. Baker's office complaining of moderate pain and discomfort, along with numbness in the right hand and thumb. R. 135.  He was provided a four-week follow-up date fur further evaluation with X-rays of his cervical spine. *Id.*  Dr. Baker concluded at Bouey's follow-up appointment on December 1, 2003, his postoperative x-rays of the previous appointment revealed "good continued position of his bone grafts, and anterior cervical plate, as well as posterior cervical instrumentation." R. 134.  Additionally, Dr. Baker opined that the earliest Bouey could return to work would be January, 2004. *Id.*

On January 15, 2004, Bouey was evaluated by the physical therapist. *See* R. 128-129.  During the examination, Bouey stated that he has pain in his upper back and neck ranging from a three to an eight on a scale of one to ten interfering with his ability to participate in activities on a prolonged basis, particularly reaching overhead, doing yard work, or any type of lifting. R. 128.  Also, moderate soft tissue dysfunction in his neck and upper back was noted as well as decreased sensation and decreased grip strength in his right hand. *Id*.

Bouey returned for another appointment with Dr. Baker on March 1, 2004. R. 133.  Dr. Baker observed that Bouey's postoperative films of February 2004 revealed good continued position of his bone grafts, anterior cervical plate, and posterior cervical instrumentation. *Id.*  However, Dr. Baker concluded Bouey's work is quite physical, and he should not return to work until June 1, 2004. *Id.*  Thereafter, on June 4, 2004, Dr. Baker indicated that Bouey should apply for permanent disability given his extensive cervical reconstruction. R. 132.

Bouey was then seen by a physician at the Central Florida Family Health Center on August 18, 2004. R. 180.  He was prescribed Naprosyn and Flexeril. *Id*.  Thereafter, on August 25, 2004, Dr. Khan

-9-

indicated that Bouey had a zero degree range of motion in his neck due to cervical laminectomy, spasms in cervical muscles, pain/numbness in his right hand, and right hand and arm strength of 3/5 and 4/5, respectively. R. 148.  On October 21, 2004, Bouey noted to the Central Florida Family Health Center that his right arm weakness improved after the surgery, but he continued to have numbness in his thumb. R. 172.  Thereafter, although it is not clear as to the actual date of the visit but it appears sometime in early 2005, it was noted that Bouey suffered from chronic neck pain, and another medication, Roboxin, was prescribed. R. 176.

  **B.**  **THE ANALYSIS**

    **1.**  **Application of the Grids Without Expert Testimony**

Bouey contends that the ALJ concluded that he has nonexertional impairments, and, therefore, the ALJ's exclusive reliance on the Grids was error. Doc. No. 17 at 2.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

In the instant case, the ALJ followed these five criteria, and made the determination that Bouey is unable to perform his past relevant work. R. 22. The ALJ proceeded to the fifth step, and utilized the Grids to direct a conclusion of "not disabled." *Id.*

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Once the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Id.* at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

Exclusive reliance on the Grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the Grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of

demonstrating that the claimant can perform specific work is through the testimony of a VE).

When considering claimant's nonexertional limitations, the ALJ need only determine whether claimant's nonexertional impairments are severe enough to preclude a wide range of employment at the given work capacity level. *Phillips v. Barnhart*, 357 F.3d 1232, 1243 (11th Cir. 2004). The ALJ must make a specific finding as to the severity of the impairments. *Foote*, 67 F.3d at 1559.

Social Security Ruling (SSR) 85-15 provides guidance on the types of restrictions in the ALJ's RFC and their impact on the use of the Grids without a VE. SSR 85-15. The Ruling does not mandate the use of a VE with limitations in climbing and balancing: "Where the effects of a person's actual limitations of climbing and balancing on the occupational base are difficult to determine, the services of a VS [vocational specialist] may be necessary." *Id.* at 6. The Ruling continued that limitations in crawling does not have much of an impact: "[C]rawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world or work." *Id.* at 7.

The Ruling also does not mandate a VE with limitations in reaching: "Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a VS may be needed to determine the effects of the limitations." *Id.* at 7.

In the instant case, the ALJ maintained:

> Mr. Bouey's degenerative disc disease of the cervical spine fails to meet the criteria of section 1.04 in that there is no compromise of a nerve root or the spinal cord. Nor is there any evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation or motion of the spine, or motor loss accompanied by sensory or reflex loss. There is no spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically

>acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours. Nor does the record reflect an impairment or combination of impairments imposing such functional limitations as to be medically equivalent in severity to any section of Appendix 1. Therefore, disability cannot be established under 20 CFR §§ 404.1520(d) or 416.920(d).

R. 17-8. He concluded that Bouey had the RFC to lift objects weighing up to 20 pounds occasionally and ten pounds frequently and to stand/walk a total of six hours overall in an eight-hour day. R. 23, Finding 6. The ALJ also found, after considering opinion evidence of the state agency, that Bouey can occasionally climb, balance, and crawl, and he can frequently reach bilaterally, but can only occasionally reach in all directions, including overhead. R. 18, 23, Finding 6. Additionally, the ALJ concluded that although Bouey's additional limitations do not allow him to perform the full range of light work, considering his age, education and work experience, there are a significant number of jobs in the national economy that he could perform. R. 22, Finding 11. Given these findings, the ALJ appropriately could rely on the Grids to determine that Bouey was not disabled. The ALJ did not err.

### 2. **Improper evaluation of the nonexertional impairment of pain**

Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1529. If an ALJ rejects a claimant's complaints of pain, "he must explicitly state as much and give reasons for that determination." *Foote*, 67 F.3d at 1561. In determining whether

the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

A review of the ALJ's decision reflects that he properly considered the nonexertional impairment of pain.  The ALJ noted that Plaintiff has not been prescribed any neck braces or any other assistive/supportive devices. R 20 .  The ALJ referenced Bouey's testimony that the medication makes the pain bearable. R. 19-20, 217.  He also discussed Bouey's daily activities.  Bouey testified that he cares for his personal needs with some assistance tying his shoes and brushing his hair, he fixes sandwiches for himself, he does the laundry without lifting a heavy basket, he reads the newspaper and Bible, he watches television, and he drives with difficulty turning his head from right to left and the need to use mirrors for backing up. R. 73, 213-14, 218-19.  Finally, The ALJ maintained:

> Upon considering the evidence of record, the undersigned finds that Mr. Bouey's medically determinable impairments could reasonably be expected to produce the alleged symptoms.  However, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible . . . The admitted daily activities and testimony do not support that Mr. Bouey would be prevented from engaging in light activity.

R. 19-20.  Based on the lack of braces or assistive/supportive devices, benefits of medication, and his

daily activities, the ALJ found that Plaintiff did not experience disabling pain as alleged and had a residual functional capacity for light work. R. 21, Finding 6. As such, there is no basis for the Court to disturb the ALJ's findings.

### 3.     Bouey's Credibility

In his findings, the ALJ states that Bouey's "allegations regarding symptoms and limitations are not entirely credible for the reasons set forth in the body of the decision." R. 21, Finding 5. Bouey argues that the ALJ erred in finding that Bouey was not entirely credible because the record clearly reveals that Bouey suffered from documented impairments causing severe pain and other limitations.

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health & Human Serv.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

-15-

The ALJ considered Bouey's daily activities along with his testimony and reports from the physicians when determining his credibility. R. 16-21. The ALJ noted Bouey "complains of discomfort when he moves his head, severe pain, and arm/hand numbness, but he testified that medications make the pain bearable." R. 19. The ALJ further considered the pain that Bouey experiences, which he characterized as off and on pain, is generally controlled with over-the-counter medication. R. 20. In making his credibility determination, the ALJ also acknowledged that Bouey has not been prescribed any neck braces or any other assistive/supportive devices R. 20. He noted Bouey's report that Tylenol helps control his headaches which are secondary to his neck surgery. *Id.* Bouey also reported he takes over-the-counter Tylenol PM to help him sleep. *Id.* The ALJ finally considered that Bouey alleges his medications cause drowsiness but there is nothing in the medical evidence indicating any disabling side effects. *Id.* Therefore, the ALJ sufficiently analyzed Bouey's credibility and did not err in his decision.

## VI.   CONCLUSION

For the reasons stated above, the Court recommends that the decision of the Commissioner be affirmed.

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** on November 27, 2007, in Orlando, Florida.

*Donald P. Dietrich*
DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and to:

The Honorable Gregory A. Presnell
United States District Judge

Mary Ann Sloan
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL            33602

The Honorable John T. Yeary
Administrative Law Judge
c/o Social Security Administration
OHA Hearing Office, SSA
Charleston Federal Center
500 Quarrier Street, Suite 100
Charleston, WV        25301